# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CRIMINAL ACTION NO. 3:15-CR-00134-JHM**

**UNITED STATES OF AMERICA**  **PLAINTIFF**

**V.**

**JOSE LUIS MADRIGAL, II et al.**  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant Jose Luis Madrigal, II, to suppress all statements made by him following his detention by law enforcement officers on October 30, 2015, and his resulting arrest [DN 38]. The Court held an evidentiary hearing on June 6, 2016, at which FBI Special Agent Nick Zarro testified. Following the hearing, the Court ordered the United States to provide defense counsel a copy of the recording and a translated transcript of Defendant Madrigal's statements to the FBI [DN 47]. The United States prepared a "verbatim translation" transcript of the interrogation (see [DN 50-1]) and provided it to defense counsel. Defendant Madrigal having filed a memorandum in support of his motion to suppress and the time for the United States to file its reply having expired, this matter is ripe for decision. For the reasons that follow, the motion is **DENIED**.

## I. BACKGROUND

This case arises out of an investigation concerning a drug trafficking conspiracy allegedly being conducted out of a tire shop at 3921 Bishop's Lane, Louisville, Kentucky. Around noon on Friday, October 30, 2015, law enforcement officers executed a search warrant at the tire shop. Illegal narcotics (heroin and methamphetamine), cash, and firearms were seized in conjunction with the search.

Defendant Madrigal, who does not speak English, was present at the property when the search warrant was executed. Special Agent Zarro detained Madrigal and, at approximately 1:50

PM, interviewed Madrigal at the tire shop. Prior to the interview, Special Agent Zarro gave the following Miranda warning to Madrigal in the Spanish language:

> NEZ: It's my phone with me, OK? OK... You have the right to... um ... per-permandencier *[sic]* in silence, OK? *OK, you have the right to remain silent. So* ... It's ... re-remain in silence. Anything that you say can and will be used against you in court. Do you understand? Yes or no?
>
> JM: M-hum.
>
> NEZ: OK. Yes or no?
>
> JM: M-hum.
>
> NEZ: [OV] Talk to me.
>
> JM: Yes.
>
> NEZ: Yes? OK. You have the right to talk to one attorney and that he should be present with you when you are interrogated—interro...gated.
>
> JM: Uh.
>
> NEZ: Do you understand, yes or no?
>
> JM: [Grunt]
>
> NEZ: OK. If you don't have the....economic responsibility *[sic]* to hire an attorney, one will, uh ... one will be asiando *[sic]* so that he represents you before any interrogation ... OK, so ... lawyer, uh, before questions for the cops *[sic]*, do you understand?
>
> JM: [Sighs]
>
> NEZ: Yes? Number five. You can also, uh....leave aside your right to remain silent and your right to request an attorney and you can prosidar *[sic]* to answer any question or make any comment that you say *[sic]*. If you decide to answer the questions, you can st-stop at the time you say and reclaim your right to request a lawyer. Do you understand what I-I-I....I told...I told you....I told you?
>
> JM: M-hum.
>
> NEZ: [Chuckles] My Spanish is little *[sic]*. I'm sorry. Do you understand, yes or no?
>
> JM: [OV] Yes, yes, yes.

(Verbatim Translation [DN 50-1] 1–2.)[1] Madrigal then told Special Agent Zarro, in response to

---

[1] Participants:

questioning, that he lived at the tire shop. Specifically, that he had been sleeping on the couch and had been living there for around three weeks. (See id. at 2–4.) Based on Madrigal's living at the tire shop, being present on the property, and having keys to the property, he allegedly has direct access and control over the contraband seized. (See [DN 1].) Accordingly, Madrigal, along with the two other co-defendants in this case, were charged with aiding and abetting and possession with intent to distribute heroin and methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and conspiracy to possess with intent to distribute heroin and methamphetamine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A).

Though Special Agent Zarro is not fluent in Spanish, he does speak it and, according to his hearing testimony, spoke it when he worked previously in Phoenix, Arizona. Special Agent Zarro testified that he downloaded a Spanish rights waiver form to his cell phone, which he found from a general search on the internet, and read from that to advise Madrigal of his rights. This interaction, and the subsequent questioning, was recorded. The interaction was primarily in Spanish, although the date and time at the beginning was in English. Special Agent Zarro testified that Madrigal indicated that he understood his rights under Miranda and waived them knowingly. Madrigal now seeks to have the statements he made during the interview with Special Agent Zarro suppressed.

---

| | | |
|---|---|---|
| | NEZ | SA Zarro, Nicholas Edward |
| | JM | Madrigal, Jose |
| Abbreviations: | | |
| | [ ] | Translator's Notes or Noise Notations |
| | UI | Unintelligible |
| | PH | Phonetic |
| | OV | Overlapping voices |
| | *sic* | Information provided as it appears in the source |

([DN 50-1] 1.) Although somewhat unclear, it appears that the italicized text in the translated transcript was spoken in the English language.

## II. ANALYSIS

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege against self-incrimination is implicated whenever an individual is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona, 384 U.S. 436, 478 (1966). "To give force to the Constitution's protection against compelled self-incrimination, the Court established in Miranda 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" Florida v. Powell, 559 U.S. 50, 59 (2010) (quoting Duckworth v. Eagan, 492 U.S. 195, 201 (1989)). A suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. The Court must consider the totality of the circumstances to determine whether a defendant validly waived his rights. See Fare v. Michael C., 442 U.S. 707, 725 (1979). The prosecution must prove a waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

A waiver of Miranda rights need not be made in writing and the prosecution does not need to show that a defendant's waiver of Miranda rights was express; an implicit waiver of the right to remain silent is sufficient to admit a defendant's statement into evidence. Berghuis v. Thompkins, 560 U.S. 370, 384 (2010) (citing North Carolina v. Butler, 441 U.S. 369, 376 (1979)); see United States v. Adams, 583 F.3d 457, 467 (6th Cir. 2009) (quoting Butler, 441 U.S. at 373–76) ("[C]ourts may infer an implied waiver 'from the actions or words of the person interrogated.'"). "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver

of the right to remain silent." Berghuis, 560 U.S. at 384; see Adams, 583 F.3d at 467 (quoting United States v. Nichols, 512 F.3d 789, 798–99 (6th Cir. 2008)) ("'[W]aiver may be clearly inferred . . . when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights' and speaks."). "As a general proposition, the law can presume that an individual who, with a full understanding of his or her [Miranda] rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Berghuis, 560 U.S. at 385. "To establish an implied waiver, the prosecution must show (1) that a Miranda warning was given, (2) that it was understood by the accused, and (3) that the subsequent statement was uncoerced." United States v. Miller, 562 F. App'x 272, 289 (6th Cir.) (citing Berghuis, 560 U.S. at 384), cert. denied sub nom. Dorsey v. United States, 135 S. Ct. 184 (2014), and cert. denied sub nom. Maddox v. United States, 135 S. Ct. 192 (2014), and cert. denied sub nom. Cooper v. United States, 135 S. Ct. 730 (2014).

There is no dispute that Madrigal was in custody or that police were obligated to advise him of his rights as required by Miranda. The issues are whether the warnings given were adequate and whether Madrigal waived his rights. Madrigal contends that the audiotape and transcribed statement fail to demonstrate a knowing and intelligent waiver by him by a preponderance of the evidence and therefore that his statements following his arrest on October 30, 2015, should be suppressed.

**A. Adequacy of Warnings Given**

Miranda prescribed the following four warnings:

"[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot

5

afford an attorney one will be appointed for him prior to any questioning if he so desires."

Powell, 559 U.S. at 59–60 (alterations in original) (quoting Miranda, 394 U.S. at 479). "The four warnings Miranda requires are invariable, but [the Supreme Court] has not dictated the words in which the essential information must be conveyed." Id. at 60 (citing cases). No "talismanic incantation" is required. California v. Prysock, 453 U.S. 355, 359 (1981) (per curiam). "In determining whether police officers adequately conveyed the four warnings, . . . '[t]he inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by Miranda.'" Powell, 559 U.S. at 60 (quoting Duckworth, 492 U.S. at 203).

Here, the substance of the warnings given reasonably conveyed to Madrigal his rights as required by Miranda. Accordingly, if there was a valid waiver, Madrigal's statements may be admitted into evidence against him.

**B. Waiver**

Here, there was no written waiver executed by Madrigal (in either English or Spanish). Whether an implied waiver occurred depends on whether Madrigal understood his Miranda rights when they were read to him in Spanish by Special Agent Zarro, which will also determine whether any such implied waiver was knowingly and intentionally made.

The Court's inquiry when determining the validity of a Miranda waiver has two dimensions: voluntariness and comprehension. Moran v. Burbine, 475 U.S. 412, 421 (1986). It does not appear that Defendant Madrigal is challenging whether the waiver was voluntary.[2] Therefore, the Court will focus on the second dimension, that is, whether the waiver was knowingly and intentionally made. In other words: whether the suspect waived his Miranda

---

[2] "[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). Defendant Madrigal does not make any mention of coercion or voluntariness in his motion.

6

rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Burbine, 475 U.S. at 421. The issue for the Court is not whether the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege," but whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." Colorado v. Spring, 479 U.S. 564, 574 (1987). This determination "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Accordingly, the government must establish by a preponderance of the evidence that, under the totality of the circumstances, the defendant made "an uncoerced choice and [had] the requisite level of comprehension" in order for the Court to conclude that a defendant's Miranda rights have been waived, Burbine, 475 U.S. at 421. Both the voluntariness and comprehension aspects of the waiver inquiry should be examined "primarily from the perspective of the police," such that where "[the] police had no reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] Miranda waiver." Garner v. Mitchell, 557 F.3d 257, 263 (6th Cir. 2009) (en banc); United States v. Al-Cholan, 610 F.3d 945, 954 (6th Cir. 2010).

Here, the totality of the circumstances shows that Madrigal impliedly waived his rights and that this waiver was made voluntarily, knowingly, and intentionally. Though Special Agent Zarro was not fluent in Spanish, it appears from the translated transcript that Zarro and Madrigal were able to communicate with and understand each other. Madrigal was read his rights point by point and asked if he understood each before Zarro moved on. Madrigal never indicated that he

did not understand his rights. In most of his responses, he indicated clearly that he understood ("m-hum" or "yes"). Though some of his responses were not clearly affirmative from the face of the translated transcript (e.g., the grunt and the sigh), this does not mean that the United States has failed to show that Madrigal understood these rights. The waiver inquiry is to be examined "primarily from the perspective of the police." Garner, 557 F.3d at 263. The pattern with which Special Agent Zarro advised of a right and inquired if Madrigal understood before moving on indicates that, from Zarro's perspective, Madrigal indicated he understood. See id. Special Agent Zarro testified that Madrigal acknowledged all of his rights. Further, after Zarro explained that if Madrigal decided to answer questions, Madrigal could discontinue talking at any time and reclaim his right to request a lawyer, Zarro asked "Do you understand, yes or no?" and Madrigal responded, "yes, yes, yes." ([DN 50-1] 2.) Where Special Agent Zarro had no reason to believe that Madrigal misunderstood the warnings, there is no basis for invalidating the Miranda waiver. Id.; see also Al-Cholan, 610 F.3d at 954 (court found that, whether or not the defendant truly understood the Miranda warnings, the waiver was valid where the agents had no contemporaneous reason to doubt that the defendant understood the warnings). Thus, the Court finds that Madrigal validly waived his rights. Accordingly, Madrigal's motion to suppress is **DENIED**.

### III.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress [DN 38] is **DENIED**.

*Joseph H. McKinley*

Joseph H. McKinley, Jr., Chief Judge
United States District Court
August 11, 2016

cc: Counsel of Record